1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSIE M. K.,[1] | Case No. CV 20-06025-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    <u>INTRODUCTION</u>

Plaintiff Rosie M. K. challenges the denial by the Commissioner of Social Security ("Defendant") of her application for disability insurance benefits ("DIB"). She contends that the Administrative Law Judge ("ALJ") erred in her consideration of the medical record and in discounting Plaintiff's subjective symptom testimony. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1]  Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, the Acting Commissioner of Social Security, is hereby substituted as the defendant.

## II.   SUMMARY OF PROCEEDINGS

On December 15, 2016, Plaintiff protectively filed a Title II application for DIB, alleging that she had been disabled since August 4, 2014, due to a fall at work that resulted in injuries to her neck, back, knees, hands, and nose; constant neck and back pain; numbness, tingling, weakness, poor grip and grasp in her hands; knee pain that radiated up her legs; hypertension; diabetes; asthma and sensitivity to chemicals; depression and anxiety; and poor concentration and memory.  (Administrative Record ("AR") 169-70, 206.)  Her application was denied, after which she requested and was granted a hearing before an ALJ.  (AR 79-87.)  Following a hearing on May 22, 2019, at which Plaintiff appeared with counsel, the ALJ found that Plaintiff had not been disabled at any time from her alleged onset date through the date of decision.  (AR 17-28, 33-54.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  This action followed.

## III.   DISCUSSION

Plaintiff contends that the ALJ erred when she: (1) found that Plaintiff's depression and anxiety were not severe impairments; (2) did not include limitations resulting from Plaintiff's mental impairments in her residual functional capacity determination; and (3) discounted Plaintiff's testimony regarding her mental limitations.  (JS at 2-6, 16-17, 19-22.)[3]

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.  *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At step two, the ALJ found that Plaintiff's degenerative disc disease of the back, mild bilateral carpal tunnel syndrome, and bilateral osteoarthritis of the knees (right knee more severe) were severe impairments but that

---

[3] Plaintiff challenges the ALJ's findings only with respect to her mental limitations. As such, the Court need not and does not address the ALJ's physical limitation findings.

Plaintiff's depression and anxiety were not severe. (AR 19-21.) At step three, the ALJ concluded that none of Plaintiff's impairments met or equaled any impairment listed in the regulations that would by itself establish disability. (AR 21-22.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work with some additional postural and environmental limitations. (AR 22.) The ALJ considered the evidence of Plaintiff's mental impairments but found that the record did not support additional limitations based on those impairments. (AR 25-27.)

At step four, the ALJ adopted the testimony of a vocational expert and concluded that Plaintiff could perform her past relevant work as an administrative assistant and that, therefore, she was not disabled.[4] (AR 27-28.)

### A. The ALJ's Step Two Determination

At step two, the ALJ found that Plaintiff's mental impairments of anxiety and depression caused no more than "minimal limitation" in her ability to perform basic work activities and were, therefore, not severe. (AR 20-21.)

The step two inquiry is meant to be a *de minimis* screening device. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). At step two, the ALJ identifies a claimant's severe impairments, *i.e.*, impairments that significantly limit his or her ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a); *Smolen*, 80 F.3d at 1290. A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed judgment as to its limiting effects on a claimant's ability to do basic work activities. Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985). The ALJ must take into account subjective symptoms in assessing severity, *Smolen*, 80 F.3d at 1290, but "medical evidence alone is evaluated . . . to assess the effects of the impairment(s)

---

[4] The ALJ did not make any findings at step five regarding Plaintiff's ability to perform other work existing in the national economy.

on ability to do basic work activities."   SSR 85-28 at *4. An impairment or combination thereof may properly be found not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *Smolen*, 80 F.3d at 1290.

Here, the ALJ found that Plaintiff's mental impairments were not severe based primarily on the assessment of examining psychologist Dr. Rosa Colonna, who evaluated Plaintiff on March 22, 2017, and opined that Plaintiff would have only mild limitations on her ability to understand, remember, and carry out detailed instructions; and a mild inability to interact appropriately with supervisors, coworkers, and peers.  (AR 20-21, 1364.)  The ALJ also relied on the record evidence that showed numerous routine mental status examination findings and a lack of psychological treatment other than counseling, as well as on Plaintiff's own reported daily activities, which included driving, cooking, shopping, cleaning, and volunteer work.  (AR 20-21.)

Plaintiff challenges the ALJ's reliance on Dr. Colonna's opinion, as well as the ALJ's interpretation of the treatment record, and contends that the ALJ failed to offer adequate justification for rejecting the contrary opinion of her therapist, psychologist Dr. Elaine Karr, and failed to consider statements suggesting greater disability offered by Workers' Compensation evaluator Dr. Robert Cooper in a February 2015 report.  (JS 2-6.)  Because the ALJ expressly considered the evidence and possible effect of Plaintiff's mental limitations at step four, however (AR 25-27), any error committed by her in finding that Plaintiff's mental impairments were not severe at step two is harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at [s]tep [four].  As such, any error that the ALJ made in failing to include the bursitis at [s]tep [two] was harmless."); *Steagall v. Berryhill*, 2017 WL 2125740, at *7 (C.D. Cal. May 16, 2017) ("It is established that

an ALJ's failure to find an impairment severe, even if erroneous, is harmless error where at the later [residual functional capacity] stage of the analysis, the ALJ discusses the impairment, the medical findings, the pertinent symptoms, and the applicable opinions concerning functional limitations.").

**B. The ALJ's Residual Functional Capacity Determination**

Plaintiff contends that the ALJ's failure to include in her residual functional capacity any limitations resulting from her mental impairments was error. Specifically, Plaintiff contends that the ALJ improperly rejected limitations found, or suggested, by Dr. Karr and Workers' Compensation evaluating psychologist Dr. Gayle Windman.  (JS at 17.)  For the following reasons, the Court concludes that the ALJ did not err.

The ALJ is responsible for assessing a claimant's residual functional capacity "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3), 404.1546(c); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and [her] decision is supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ's residual functional capacity determination is supported by substantial evidence in the record.  The ALJ relied primarily on the opinion of consulting psychologist Dr. Colonna, who examined Plaintiff and diagnosed Adjustment Disorder with mixed emotional features to consider depression and anxiety, opining that Plaintiff would have no more than mild limitations on her ability to understand, remember, and carry out detailed instructions and no more than a mild inability to interact appropriately with supervisors, coworkers, and peers.  (AR 1364.)   The ALJ also relied on the opinion of Dr. Anne Welty, a Workers' Compensation evaluator, who found in April 2016 that Plaintiff would have no impairment in her activities of daily living, social functioning, and

concentration, persistence and pace; and only "mild" impairment in her ability to adapt to stressful circumstances, as well as on the opinion of Dr. Cooper, who noted in February 2015 that Plaintiff was "psychiatrically capable of performing her preinjury occupation." (AR 26, 1478, 1543-44.)

The ALJ further relied on the "normal mental status examination findings" of Plaintiff's treatment providers as well as her conservative treatment history and functional activities of daily living. (AR 21.)  Because the records cited to by the ALJ support her interpretation of the evidence as to the mental status examination findings[5] and Plaintiff's conservative treatment history, which consisted only of counseling with no medication use or emergencies, the Court cannot say that the ALJ's findings are unreasonable.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff contends that the ALJ erred by failing to offer adequate justification for rejecting the opinion of her therapist, Dr. Karr.  On May 1, 2019, Dr. Karr completed a Mental Impairment Questionnaire on which she indicated a diagnosis of persistent depressive disorder and "anxious distress" and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60, the same GAF score given by Dr. Colonna in March 2017.[6]  (AR 1364, 1994.)   Dr. Karr noted signs and symptoms, such as depressed mood, sleep disturbance, short-term memory, blunt affect, distractibility, and irritability, and opined that Plaintiff would have only a "fair" ability to perform most work activities, would be moderately restricted in her activities of daily living and maintaining social functioning, and would "often" have deficiencies in concentration, persistence or pace.  (AR 1994-95, 1997-98.)

---

[5] The ALJ noted numerous examples in her decision. (AR 25, 26.)

[6] "A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning."  *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

Plaintiff also contends that the ALJ erred by rejecting the functional assessment of Dr. Windman.  On November 28, 2014, Dr. Windman examined and administered psychological testing to Plaintiff in connection with Plaintiff's Workers' Compensation proceedings.  (AR 1564-93.)  Dr. Windman diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified, with anxiety, and indicated on a Mental and Behavioral Disorders Impairment Chart that Plaintiff would be "moderately" impaired in her activities of daily living; social functioning; concentration, persistence and pace; and adaptation.  (AR 1585, 1588.)  Dr. Windman provided a narrative report for each category, explaining that, for example, Plaintiff was experiencing impairment in bodily functions, personal hygiene, eating properly, and sleeping; had become irritable and impatient with people; had experienced difficulty paying attention, concentrating, and remembering things; and tended to "channel emotional stress into intensified medical complaints[.]"  (AR 1588-89.)

An ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting all or part of a treating physician's opinion in favor of the opinion of an examining physician, as the ALJ did in the case at bar.  *See Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record.") (quotation omitted).  The independent clinical findings of an examining physician constitute "substantial evidence."  *Id*. at 632 (citation omitted).  The Court finds the ALJ did so here.

The ALJ rejected both Dr. Karr's and Dr. Windman's assessments for the same reason, namely, that they relied exclusively on Plaintiff's own statements, which were not supported by the objective medical evidence, Plaintiff's conservative treatment history, or Plaintiff's daily activities.  (AR 26.)
///

1    The Court notes first that the ALJ's statement that Dr. Windman relied

2    exclusively on Plaintiff's own statements is not accurate.  As noted above, Dr.

3    Windman conducted psychological testing, the results of which are generally

4    considered to be objective medical evidence.  *See*, *e.g.*, *Morgan*, 169 F.3d at 598

5    (noting conflict between the claimant's "subjective testimony and objective medical

6    evidence" in the form of psychological evaluations).  Dr. Windman's test results

7    "confirmed residual abnormal levels of anxiety, somatization, mistrust, suspicion,

8    hopelessness and depression with low energy level, cognitive impairment, low self-

9    esteem, social withdrawal, pessimism, irritability and a sad mood."  (AR 1582.)

10   Nevertheless, the Court finds that the reason that the ALJ gave for not

11   granting greater weight to the opinions of either Dr. Karr or Dr. Windman, - that

12   they relied on Plaintiff's self-reported history and symptoms, which the ALJ

13   properly discounted - was legitimate (in that Dr. Windman plainly relied on both

14   testing and Plaintiff's account) and supported by substantial evidence, as discussed

15   further herein.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An

16   ALJ may reject a treating physician's opinion if it is based to a large extent on a

17   claimant's self-reports that have been properly discounted as incredible.") (cleaned

18   up).  As such, the Court finds that the ALJ's error with respect to Dr. Windman was

19   harmless.  *See Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding error

20   harmless where it was "inconsequential to the ultimate nondisability

21   determination").

22   Finally, the Court rejects Plaintiff's argument that the ALJ erred in not

23   assigning particular weight to the GAF scores of 60 that were assessed by Dr. Karr

24   and Dr. Colonna.  (JS at 3.)  "GAF scores do not have a direct correlation to Social

25   Security severity requirements . . . and should not be considered in isolation."

26   *Devoe v. Berryhill*, 2018 WL 1605564, at *19 (C.D. Cal. Mar. 29, 2018) (noting "a

27   score of just one point higher, 61, would indicate 'mild' symptoms or 'some'

28   difficulty in social, occupational, or school functioning but that Plaintiff was

8

'generally functioning pretty well,' with 'some meaningful interpersonal relationships.'").  The ALJ addressed the GAF scores but declined to give them any weight.  (AR 26-27.)  No more was required.  *See, e.g.*, *Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 Fed. App'x 666, 667 (9th Cir. 2012) (noting "this Court has not found error when an ALJ does not consider" GAF scores).

### C. Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide legitimate reasons for rejecting her own statements about her mental limitations.  (JS at 19-22.)  For the following reasons, the Court finds that the ALJ did not err.

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 23), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4.  In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.  The ALJ must provide specific, clear and convincing reasons for rejecting the claimant's statements.  *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted).  The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester*, 81 F.3d at 834.

Plaintiff testified that she is "ill-tempered" and has difficulty getting along with people.  She testified that she does not have a lot of patience, is "very emotional," and has difficulty with memory, staying focused, and concentrating.  (AR 46.)  She testified that she occasionally drove and was able to go shopping, to cook, and to do

laundry although she could not do "light housekeeping or cleaning" because of pain in her hands. (AR 46-47.) Plaintiff testified that she tries to see her therapist, Dr. Karr, every two weeks. (AR 49.) In a function report that Plaintiff filled out and signed on March 5, 2017, she stated that she cooked dinner for her siblings several times a week; fed, groomed, and walked her dog and her siblings' dog; did laundry and light cleaning; went shopping for groceries and clothes once or twice a week; would sometimes forget to balance her checkbook; had difficulty maintaining interest in TV shows and would fall asleep while reading; would sometimes meet friends for lunch; would get easily frustrated and impatient and was "less tolerant" with other people; found simple instructions easier to follow than complex ones; handled stress poorly; and found it difficult to adjust to new routines. (AR 226-31.)

In her decision, the ALJ found that Plaintiff's testimony was not consistent with the medical and other record evidence for several reasons. (AR 23.) The ALJ found that Plaintiff by her own account was "essentially independent" in her daily activities, given that she drove, shopped, walked her own and other dogs, cooked for her siblings, and did light housework. (AR 24.) The ALJ found that Plaintiff's treatment had been conservative. (AR 24, 25.) Finally, the ALJ found that Plaintiff's statements were belied by the "essentially normal" mental status examinations. (AR 26.) These reasons for discounting Plaintiff's testimony are clear and convincing and supported by substantial evidence.

First, although Plaintiff takes issue with two aspects of the ALJ's description of her daily activities (volunteering on a neighborhood council and typing or doing paperwork for several hours a day), (JS at 20-21), she does not challenge the ALJ's finding that she was able to perform various activities inside and outside her home, some of which, - for example, shopping or having lunch with friends, - necessarily involve interactions with other people, despite Plaintiff's statement that she would get frustrated and impatient with others. Although this finding does not demonstrate an ability to complete a full workweek, the ALJ was entitled to take it into account

in determining whether Plaintiff's testimony should be accepted. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (noting "ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct" in weighing testimony).

Second, the ALJ was permitted to consider Plaintiff's apparent unwillingness to seek treatment other than counseling as a basis for concluding that her mental impairment was not as limiting as she alleged. *See*, *e.g.*, *Burch*, 400 F.3d at 681.

Finally, the ALJ was entitled to consider the disparity between Plaintiff's statements and the objective medical evidence, which largely showed unremarkable mental examination status results, as an additional ground for discounting her testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The view of [the examining doctors], along with the contradictions from [the claimant's] own testimony and the lack of objective medical evidence supporting [the claimant's] claims, together constitute substantial evidence in support of the ALJ's negative credibility determination[.]").

## IV. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:    September 28, 2021      _____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE</u>

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.